**INDEPENDENCE PARK APARTMENTS, et al., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**No. 94–1A–C.**

United States Court of Federal Claims.

March 23, 2004.

Everett C. Johnson, Jr., Latham & Watkins, Washington, DC, for plaintiffs.

Kenneth M. Dintzer, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the brief were Assistant Attorney General Peter

---

D. Keisler, David M. Cohen, Director, Commercial Litigation Branch, and Kenneth D. Woodrow and Michael F. Bahler, Trial Attorneys, Commercial Litigation Branch, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This case is an offshoot of *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir.2003) (*"Cienega VIII"*), which originally involved contractual and takings claims arising with federally supported low-income housing projects. The case is now pending before the Court on its third remand from the Federal Circuit. At this juncture, the contractual claims have been elided, and the takings claims are the subject of renewed discovery as the parties and the Court prepare for a trial to adjust a judgment that was ordered reinstated in *Cienega VIII*. The dispute now before the Court concerns the arrangements and schedule for deposing the claimants' only expert witness, Dr. Richard Peiser, a professor at Harvard University. On March 10, 2004, plaintiffs filed, by leave of the Court, a motion for a protective order regarding Dr. Peiser. On that same day, the government filed an opposition and request for expedited consideration. A hearing addressing the motion and the parties' arguments respecting the deposition of Dr. Peiser was conducted on March 11, 2004. At that hearing, the government requested extended time to depose Dr. Peiser beyond that presumptively allowable under the applicable rule.[1] For the reasons set forth below, plaintiffs' motion for a protective order is granted in part and denied in part, and the government's oral request for extended time is granted in part and denied in part.[2]

## PROCEDURAL BACKGROUND

A truncated recitation of the long and tortuous history of this case provides context for the discovery dispute. The plaintiffs are four entities that were selected as "model plaintiffs" for purposes of trial and case administration in *Cienega Gardens v. United States*, No. 91–1–C (*"Cienega"*). All plaintiffs in *Cienega* were owners of low-income housing units who filed suit seeking redress in connection with the passage of the Emergency Low Income Housing Preservation Act of 1987, Pub.L. No. 100–242, tit. II, 101 Stat. 1877 (1988) (codified at 12 U.S.C. § 1715*l* note), and the Low–Income Housing Preservation and Resident Homeownership Act of 1990, Pub.L. No. 101–625, tit. VI, 104 Stat. 4249 (1990) (codified in scattered sections of Title 12 of the U.S.Code, including 12 U.S.C. §§ 4101–4124), which nullified plaintiffs' option to prepay their federally subsidized mortgages after 20 years, thus barring them from removing the regulatory restrictions on rental and use of their property. *See Cienega VIII*, 331 F.3d at 1323. The plaintiffs' original complaint in *Cienega* encompassed claims based on a breach-of-contract theory as well as on categorical and regulatory takings under the Fifth Amendment. *Id.* at 1324. In 1997, Judge Robinson of this Court conducted a trial on the model plaintiffs' breach-of-contract claims and ruled in favor of those plaintiffs, awarding $3,061,107 in damages. *Cienega Gardens v. United States*, 38 Fed.Cl. 64 (1997) (*"Cienega III"*). On appeal, the Federal Circuit reversed this Court's breach-of-contract judgment, ruling that the plaintiffs lacked privity of contract with the government. *Cienega Gardens v. United States*, 194 F.3d 1231 (Fed.Cir.1998) (*"Cienega IV"*).

On remand, Judge Hodges of this Court dismissed plaintiffs' takings claims. *Cienega Gardens v. United States*, 46 Fed.Cl. 506

---

**1.** Rule of the Court of Federal Claims ("RCFC") 30(d)(2) provides that
[u]nless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. The court must allow additional time consistent with RCFC 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination.

This Rule is a verbatim counterpart to the corresponding Federal Rule of Civil Procedure, Fed. R.Civ.P. 30(d)(2), as amended in 2000.

**2.** A summary of the Court's ruling on the motion was provided orally at the close of the hearing held on March 11, 2004, to be followed by a written opinion. This opinion constitutes a more detailed explanation of the Court's ruling.

(2000) (*"Cienega V"*). On appeal of that ruling, the Federal Circuit held that the regulatory takings claims were ripe for adjudication and further remanded the matter to this Court. *Cienega Gardens v. United States,* 265 F.3d 1237 (Fed.Cir.2001) (*"Cienega VI"*). On the second remand, Judge Hodges granted summary judgment to the government, ruling that the plaintiffs did not have vested property rights and that, if any taking had occurred, it could not have been a compensable taking as a matter of law. *Cienega Gardens v. United States,* No. 94–1C (Fed.Cl. Jan. 8, 2002) (order granting summary judgment).

The Federal Circuit overturned that grant of summary judgment on appeal in *Cienega VIII.* In doing so, the Federal Circuit ruled that the *Cienega* plaintiffs did hold vested property rights and were not legally barred from potential recovery. *Cienega VIII,* 331 F.3d at 1353–55. Additionally, as to the four model plaintiffs, the Court of Appeals held that the record justified a finding that those plaintiffs, whose claims had already been ventilated at trial, had suffered a compensable, temporary, regulatory taking. *Id.* at 1353. Respecting those plaintiffs, the court ordered that "the original damages judgment entered in *Cienega* [after the trial on a breach-of-contract theory in 1997] be reinstated in the amount awarded therein for each of the four Model Plaintiffs." *Id.* In its mandate to this Court regarding the reinstatement of the model plaintiffs' damages award, the Federal Circuit directed that "[o]n remand, the trial court may adjust the original damages award reinstated by this court if it is shown by either party not to compensate accurately for the regulatory taking, and may also determine whether interest is or is not due." *Cienega,* Judgment and Mandate (Fed.Cir. Nov. 5, 2003). Regarding the thirty-eight plaintiffs who were not model plaintiffs, the court held that sufficient evidence did not exist on the record to conduct an analysis of their takings claims under the regulatory takings principles set out in *Penn Central Transp. Co. v. New York*

City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), and it remanded those claims for development of an appropriate factual record. ¯*Cienega VIII,* 331 F.3d at 1353–54.

On January 23, 2004, the parties in *Cienega* proposed a schedule for proceedings pursuant to which discovery regarding any potential adjustment of the reinstated model plaintiffs' damages award would commence on that same day and close on April 16, 2004. In the proposal, the parties provided for an exchange of affirmative expert reports and rebuttal expert reports. Status conferences addressing the schedule for discovery and trial on the issues remanded to this Court by the Federal Circuit were held on January 14 and 28, 2004. The Court adopted basic elements of the parties' proposed schedule in its Order of January 29, 2004, and scheduled a trial to commence on May 3, 2004. Additionally, in light of the Federal Circuit's instructions on remand, this Court invoked RCFC 21 (last sentence) and ordered the claims of the four model plaintiffs severed from those of the other 38 *Cienega* plaintiffs. The instant case, *Independence Park Apartments, et al. v. United States,* No. 94–1A–C, was established to proceed independently from the original *Cienega* case. Importantly for the instant motion, because the Federal Circuit's mandate in *Cienega VIII* orders the original judgment in *Cienega* to be reinstated with adjustments, this Court has placed the burden of producing evidence of adjustments on the party seeking any such adjustment. Thus, while the overall burden of proof remains with plaintiffs, both the plaintiffs and the government potentially have the burden of producing evidence at the trial scheduled for early May 2004. Hr'g Tr. at 16–17, 23–24 (Jan. 14, 2004); Hr'g Tr. at 18–19 (Jan. 28, 2004).

As foreshadowed by the parties' representations at the scheduling conferences, counsel for the government scheduled a deposition of Dr. Richard Peiser to occur on March 16, 2004. Pls.' Mot. at 4; Def.'s Opp., Ex. D.[3]

---

3. At the original trial in *Cienega,* the model plaintiffs presented expert testimony by Dr. Peiser related to the economic harm those plaintiffs had suffered. *Cienega III,* 38 Fed.Cl. at 74–75. Prior

to that trial, counsel for the government deposed Dr. Peiser about his report, and Dr. Peiser was cross-examined by the government at the trial. *See* Hr'g Tr. at 4, 22 (Mar. 11, 2004). Dr. Peis-

The government also gave notice that it wished to depose Dr. Peiser a second time on April 12, 2004, after supplemental expert reports had been filed in connection with the renewed discovery preparatory to trial. Def.'s Opp. at 5; Hr'g. Tr. at 22, 25–26 (Mar. 11, 2004). Plaintiffs' motion for a protective order sought specifically to forestall the March deposition and generally to prevent the government from deposing Dr. Peiser "twice in this phase of the case." Pls.' Mot. at 1. In opposition, the government contended that it would be prejudiced if it could not depose Dr. Peiser both at a stage in the preparations for trial when it was still formulating its position regarding adjustments to the judgment to be reinstated, as well as thereafter once Dr. Peiser had submitted his supplemental expert reports. Hr'g. Tr. at 19 (Mar. 11, 2004). At the hearing on plaintiffs' motion for a protective order, the government clarified that it wanted leave to depose Dr. Peiser on two different occasions and that the time for each day of deposition should encompass at least the standard seven hours of deposition time. Id. at 19–24.

## DISCUSSION

### A. The Parties' Positions

Plaintiffs contend that allowing the government to depose Dr. Peiser twice during this phase of the case would give defendant an unfair advantage and create an undue burden on Dr. Peiser. Pls.' Mot. at 1. At oral argument, plaintiffs' counsel suggested that the Court address the apparent inequity in defendant's plan either by granting each party equal time to depose the other's experts or by ordering the government to abide by the seven-hour time limit set out in RCFC 30(d)(2). Hr'g Tr. at 8–10 (Mar. 11, 2004).

The government responds by noting that it did not have a chance to depose Dr. Peiser regarding the applicability of his model to a takings claim in the context of the initial *Cienega* trial, which proceeded on a breach-of-contract theory. Def.'s Opp. at 4. The government further contends that "a deposition of Dr. Peiser on his original model early in the process is vital in the Government's efforts to carry [its] burden [of production]" and that "such a deposition will provide [it] with a road map to the possible fact discovery the Government will need to perform before trial." Id. at 3.

The government avers that its proposed second deposition of Dr. Peiser would be "non-duplicative" and would regard only "Dr. Peiser's new reports." Def.'s Opp. at 5. To this end, the government states that it "would stipulate that in the [initial] deposition, [it] would not question Dr. Peiser about any new model he might have proffered." Id. Correspondingly, the government would limit the proposed second deposition to any alterations Dr. Peiser made to his original model for this phase of the case. Id. At the hearing on the motion for a protective order, the government further suggested that no time limitation should be placed on its depositions of Dr. Peiser or, alternatively, that it be allowed seven hours for each of the two days it proposes to depose Dr. Peiser. Hr'g Tr. at 23–24 (Mar. 11, 2004).

### B. Analysis

As a starting point, RCFC 26(b)(4)(A) provides that an expert witness shall not be deposed until after his or her report has been provided.[4] In the unusual circumstance of this case, the Court has suggested that defendant might be granted leave to take the extraordinary step of deposing plaintiffs' expert witness prior to the exchange of expert reports. *See* Hr'g Tr. at 19–20 (Jan. 28, 2004). In making such a suggestion, however, the Court did not address the scope of such a deposition and specifically left for future consideration whether defendant was entitled to multiple depositions. Id. at 20. Indeed, the Court's suggestion was made at a time when plaintiffs had not identified their expert(s) for this phase of the case. Even more specifically, plaintiffs had not yet indi-

er's testimony formed a substantial basis for the Court's award of damages. *Cienega III*, 38 Fed. Cl. at 85–89. The *Independence Park* plaintiffs have indicated that Dr. Peiser will provide their only expert testimony in the current phase of the case. Pls.' Mot. at 4; Hr'g Tr. at 12 (Mar. 11, 2004).

4. This Rule also is an exact duplicate of its counterpart, Fed.R.Civ.P. 26(b)(4)(A).

cated Dr. Peiser would be retained as one of their testifying experts. Hr'g Tr. at 10 (Jan. 28, 2004).

Two provisions of the Rules provide significant barriers to the government's proposed scheme for deposing Dr. Peiser on two days roughly a month apart. First, RCFC 30(a)(2)(B) expressly requires that a party seeking to depose an individual more than once must obtain leave from the Court to do so.[5] The government's counsel did not make such a request at the January 28 conference in *Cienega*, and no motion to that effect had been presented to the Court prior to the hearing on March 11. However, during the hearing on March 11, defendant's counsel made a request for leave to conduct such a second deposition. Hr'g Tr. at 24 ("What I am suggesting is this: The March 16th deposition will go forward as seven hours but then the expert depositions, that take place in expert discovery, be open ended to the point of two days for each side.").

Second, Rule 30(d)(2) is equally explicit in providing that "[u]nless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours." The seven-hour presumptive limit provided by this Rule is of relatively recent vintage, stemming from the 2000 amendments to Fed.R.Civ.P. 30(d)(2). The Rule has been applied to limit a deposition to seven hours absent a showing of good cause for additional time. *See Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 32 (D.Conn.2003) (additional time for deposition of non-testifying expert denied where expert had discussed his investigative findings extensively during a seven-hour deposition). *Cf. Hollen v. USCO Distrib. Servs., Inc.*, 2004 WL 234408, *3 (D.Minn. Feb.3, 2004) (finding that a four-hour deposition was not complete and stating that the deposing party was "therefore 'entitled' to a few more hours"). Extra time "must" be given under the Rule where good cause is shown, RCFC 30(d)(2) (second sentence), and the Court has discretion to determine how much time is reasonable under the circumstances and whether a deposition may extend over more than one day. *See* Fed.R.Civ.P.

30(d)(2) advisory committee's note (2000 amend.) ("The rule directs the court to allow additional time where consistent with Rule 26(b)(2) if needed for a fair examination of the deponent.... The court may enter a case-specific order directing shorter depositions for all depositions in a case or with regard to a specific witness. The court may also order that a deposition be taken for limited periods on several days.").

As evidenced by plaintiffs' motion for a protective order, the parties have reached no agreement as to the duration or timing of a deposition of Dr. Peiser. While it is apparent that the government intends to depose Dr. Peiser for more than seven hours, it made no motion for authorization to do so pursuant to Rules 30(a)(2)(B) and 30(d)(2) prior to the hearing on plaintiffs' request for a protective order. In connection with its oral request for additional deposition time, the government has provided a limited explanation as to why just cause exists for an extended deposition. The government asserts that failure to grant additional time will be "prejudicial," Hr'g Tr. at 19 (Mar. 11, 2004), but that position seems to be based on the circumstance that it wishes to depose Dr. Peiser about two subjects, his past reports and testimony (with which the government is already familiar) and his supplemental reports to be submitted in this case. In actuality, by the first deposition the government seems to want Dr. Peiser to provide a catalogue of reasons why his prior evaluation of damages under a breach-of-contract theory would not provide a satisfactory valuation of property for takings purposes. *Id.* at 20–22. Any such effort would be targeted toward using the opposing party's expert to build one's own case. However, this case has had a long and convoluted history, and its current procedural posture is very unusual if not unique. Dr. Peiser's expert opinions are likely to serve a pivotal role in any adjustments to the award of damages that might be made as a result of the trial scheduled to occur relatively soon. Consequently, the Court concludes that some additional time should be granted to the government to depose Dr. Peiser.

---

5. Again, this Rule reproduces verbatim its counterpart in Fed.R.Civ.P. 30(a)(2)(B).

The parties were scheduled to exchange expert reports on March 12, 2004, *id.* at 12, and presumably that exchange occurred in timely fashion. Thus, the issue of whether Dr. Peiser may be deposed before such exchange notwithstanding RCFC 26(b)(4)(A) is now moot. Regarding the other disputed questions, the Court finds good cause to allow the government preliminarily to depose Dr. Peiser regarding how his model for calculating damages on a breach-of-contract basis from the first *Cienega* trial applies to plaintiffs' takings claims. Thus, depositions on two separate days are permissible. Additionally, the Court is not convinced that granting leave for the government to depose Dr. Peiser for longer than the standard seven-hour period would create an undue burden for plaintiffs or for Dr. Peiser. The government will be required to pay Dr. Peiser's fee for the time he spends in such depositions, *see* RCFC 26(b)(4)(C)(i), and, so long as an undue amount of time is not taken up by the two depositions, there appears to be little likelihood that the resources of the parties will be unnecessarily expended or that Dr. Peiser will be subject to repetitive or harassing questions. The Court therefore establishes an overall limit of ten hours on government counsel's questioning of Dr. Peiser in depositions on the two separate days.

## CONCLUSION

The Court grants leave to the government to depose Dr. Peiser for no more than ten hours, to be divided between two days as the government sees fit and as scheduled by the parties. Plaintiffs' motion for a protective order is denied in part and granted in part.

It is so ORDERED.