**THE GLOBE SAVINGS BANK, F.S.B., and Phoenix Capital Group, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1550C.**

United States Court of Federal Claims.

June 24, 2004.

---

8. One major category of compensation, for example, severance pay, was excluded for some years and included for others.

Melvin C. Garbow, Arnold & Porter LLP, Washington, D.C., for plaintiffs. Of counsel were Howard N. Cayne, David B. Bergman, Walter F. Zenner, Ida L. Bostian, and Matthew H. Solomson.

Luke Levasseur, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Deputy Assistant Attorney General Stuart E. Schiffer, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director. Of counsel were Scott D. Austin, Ashley N. Bailey, and John N. Kane, Trial Attorneys, Civil Division, Department of Justice, Washington, D.C.

## ORDER

LETTOW, Judge.

Trial on damages in this *Winstar*-related case [1] is scheduled to commence on July 12, 2004.[2] In preparation for that trial, plaintiffs ("Globe and Phoenix" or "Globe") have filed several motions raising evidentiary and procedural issues. The motions are styled as follows: (1) Plaintiffs Globe and Phoenix's Motion to Introduce Deposition Testimony of Government Official Jack T. Reidhill ("Pls.' Reidhill Mot."), (2) Plaintiff Globe and Phoenix's Motion to Exclude the Testimony of Defendant's Proffered Expert Witness David J. Ross ("Pls.' Ross Mot."), (3) Plaintiffs Globe and Phoenix's Motion to Preclude the Government's Newly Disclosed Fact Witnesses from Testifying at Trial ("Pls.' New Witnesses Mot."), and (4) Plaintiffs Globe and Phoenix's Motion for Authorization to Take the Deposition of Newly–Disclosed Defense Witness Harry Potter ("Pls.' Potter Mot."). This order addresses and rules on each motion in turn.

### I. The Reidhill Motion

Globe seeks to introduce as substantive evidence at trial portions of a "common issues" deposition given in 1998 by Jack T. Reidhill. At the time of his deposition in 1998, "Mr. Reidhill was employed as head of the Policy Research Section of the FDIC [*i.e.*, the Federal Deposit Insurance Corporation]." Def.'s Opp'n to Pls.' Reidhill Mot. at 4 (citing Pls.' Reidhill Mot., Ex. A at 82) (Common Issues Deposition of Jack Reidhill (Mar. 26, 1998)). Globe contends that Fed. R.Evid. 801(d)(2)[3] and Rule 32(a)(2) of the Rules of the Court of Federal Claims ("RCFC")[4] each provide independent, and

---

1. *See United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

2. In the preliminary phases of the case, the government was adjudged liable to plaintiffs for breach of contract, and genuine disputes of material fact were determined to exist respecting certain of plaintiffs' claims for damages. *See Globe Sav. Bank, FSB v. United States*, 55 Fed.Cl. 247 (2003) (holding the government liable to plaintiffs for breach of contract); *Globe Sav. Bank, FSB v. United States*, 59 Fed.Cl. 86 (2003) (granting in part and denying in part the government's motion for summary judgment as to plaintiffs' claims of damages).

3. The Rule provides, in pertinent part:
   A statement is not hearsay if—
   . . .
   (2) Admission by a party-opponent. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement

of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.
   Fed.R.Evid. 801(d)(2).

4. The Rule provides:
   At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
   . . .

independently sufficient, avenues for admission of Mr. Reidhill's deposition testimony. Pls.' Reidhill Mot. at 3–4; Pls.' Reply in Supp. of Pls.' Reidhill Mot. at 3–7. Globe specifically claims that portions of Mr. Reidhill's deposition constitute (1) admissions by the government through statements by Mr. Reidhill as its servant concerning a matter within the scope of his employment and, additionally, (2) statements by a managing agent of the government. In response, the government contends that plaintiffs have made no showing that Mr. Reidhill would be unavailable to testify at trial and that plaintiffs have not overcome the law's preference for live testimony. Def.'s Opp'n to Pls.' Reidhill Mot. at 1–3.[5] The government additionally maintains that Fed.R.Evid. 801(d)(2) does not provide a basis independent of RCFC 32(a)(2) for admission of deposition testimony as substantive evidence at a trial, *id.* at 7, and finally that Globe falls short of satisfying the requirements of either rule. *Id.* at 4–9.

### A. Fed.R.Evid. 801(d)(2)

#### 1. *Unavailability of the declarant as a witness is not required.*

■ Globe has not attempted to show that Mr. Reidhill is unavailable as a witness at trial. In fact, Globe has listed him on the "may call" section of its witness list. *See* Pls.' Globe and Phoenix's Witness List at 6.[6] However, the government is mistaken that Rule 801(d)(2) requires a showing of the unavailability of the declarant.[7]

> (2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under RCFC 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose. RCFC 32(a)(2).

The Federal Rules of Evidence divide the exceptions to the hearsay rule[8] into two groups based on whether the declarant is unavailable as a witness. *See* Fed.R.Evid. 804 advisory committee's notes, Note to Subdivision (a) (1972 Proposed Rules). First, Rule 803 contains twenty-three exceptions for which unavailability is not required, premised on the theory that the circumstances under which the listed types of statements are made lend a sufficient assurance of trustworthiness. Fed.R.Evid. 803 advisory committee's note (1972 Proposed Rules). Second, Rule 804(b) lists five types of statements that are admissible only if the declarant is unavailable as a witness, demonstrating a preference for live testimony but not to the point of an exclusion of the evidence if the declarant is unavailable. Fed.R.Evid. 804 advisory committee's note, Note to Subdivision (b) (1972 Proposed Rules).

Statements denominated as "admissions by a party-opponent" are not contained in either of the foregoing groups of exceptions to the hearsay rule. That is because "admissions are outside the framework of hearsay exceptions, classed as nonhearsay, and excluded from the hearsay rule," as a result of the operation of the adversary system. 2 Charles McCormick, *McCormick on Evidence* § 254, at 137 (John W. Strong ed., 5th ed.1999) (hereafter "*McCormick on Evidence*"). *See also* Fed.R.Evid. 801(d)(2) (providing that an admission by a party-opponent is "not hearsay," quoted in full *supra*, at 93 n. 3). As Professor Wigmore explains, admissions "pass the gauntlet of the hearsay rule,"

---

5. Fed.R.Evid. 804(a) defines "unavailability" by listing five situations in which a declarant would be unavailable as a witness: (1) an "exempt[ion] by ruling of the court on the ground of privilege from testifying," (2) a "refus[al] to testify ... despite an order of the court," (3) "a lack of memory," (4) "death or then existing physical or mental illness or infirmity," and (5) absence where judicial process "or other reasonable means" have not been successful in procuring attendance.

6. The government does not include Mr. Reidhill on its own witness list, but it expressly reserves the right to call any witness Globe has listed but subsequently withdraws before trial. *See* Def.'s Witness List Pursuant to App. A, ¶ 15 at 9.

7. "A 'declarant' is a person who makes a statement." Fed.R.Evid. 801(b). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Fed.R.Evid. 801(a).

8. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c).

which requires that extrajudicial assertions be tested by cross-examination, because the declarant, in the circumstance of making an admission, is "the only one to invoke the hearsay rule and because he *does not need to cross-examine himself*." 4 John Henry Wigmore, *Evidence in Trials at Common Law* § 1048, at 4 (James H. Chadbourn ed., 1972) (hereafter *"Wigmore on Evidence"*). "In other words, the hearsay rule is satisfied; [the declarant] has already had an opportunity to cross-examine himself . . .; or (to put it another way) he now as opponent has the full opportunity to put himself on the stand and explain his former assertion." *Id.* at 5 (italics omitted). *See also* 2 *McCormick on Evidence* § 254, at 135–37 (discussing the major theories on admissions as nonhearsay). As Professor McCormick opines:

> Regardless of the precise theory, admissions of a party are received as substantive evidence of the facts admitted and not merely to contradict the party. As a result, no foundation by first examining the party, as required for impeaching a witness with a prior inconsistent statement, is mandated for admissions.

2 *McCormick on Evidence* § 254, at 137 (footnotes citing authorities omitted). Similarly, "unavailability is not required of admissions." *Id.* at 139. *See also Coleman v. Wilson,* 912 F.Supp. 1282, 1295 n. 4 (E.D.Cal. 1995) ("if a written statement is admissible under the evidence rules, it is not excludable on the grounds that the statement could also have been presented in the form of live oral testimony") (citing *In re Adair,* 965 F.2d 777, 779 (9th Cir.1992)), *appeal dismissed,* 101 F.3d 705 (9th Cir.1996) (table); 4 *Wigmore on Evidence* § 1049, at 9 ("the further requirement of the hearsay exception, namely, that the declarant must first be accounted for as deceased, absent from the jurisdiction, or otherwise unavailable . . ., has never been enforced for the use of a party's admissions") (italics omitted). Application of the unavailability requirement to admissions would turn the theory for classifying admissions as nonhearsay on its head: the availability of the witness is the very means by which the party-opponent may seek to reap, in effect, the benefits of cross-examination.

This logic extends to the situation in which an admission is contained in a deposition. Ordinarily, "if the witness is *present in the courtroom* at the time when his deposition is offered, the deposition is inadmissible, because there is no necessity for resorting to it." 5 *Wigmore on Evidence* § 1415, at 240. However,

> [t]he general rule that the witness must be shown unavailable for testifying in court does not apply to a party's use of his *party-opponent's deposition* . . .—for the simple reason that every statement of an opponent may be used against him as an *admission* without calling him . . .; the opponent's sworn statement, though called a deposition, is no less an admission than any other statement of his.

*Id.* at 243.

In short, Globe need not show that Mr. Reidhill will be unavailable to testify as a witness at trial prior to offering as evidence any admissions Mr. Reidhill may have made in his deposition testimony. *But see Kolb v. County of Suffolk,* 109 F.R.D. 125 (E.D.N.Y. 1985) (deposition testimony of defendant's employees conceded to be admission under Fed.R.Evid. 801(d)(2)(D) could not be used in lieu of employees' live testimony where employees were readily available to testify at trial).

### 2. *Fed.R.Evid. 801(d)(2) is independent of RCFC 32(a)(2).*

As the government would have it, "[e]ven assuming Mr. Reidhill's deposition testimony constitutes an admission for purposes of FRE 801(d)(2)(D) . . ., the deposition, to be admissible, would still need to fall within a provision of RCFC 32 to be admissible." Def.'s Opp'n to Pls.' Reidhill Mot. at 7. This view of the relationship between the Federal Rules of Evidence and the rules of procedure respecting admissions is erroneous.

As courts and commentators have observed, " 'the Federal Rules of Evidence . . . provide the general rules regarding the use at trial of depositions. . . . [Fed.R.Civ.P.] 32 defines some circumstances in which a deposition is admissible, leaving most issues of admissibility to the Federal Rules of Evi-

dence.'" *Coleman,* 912 F.Supp. at 1295 (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2141, at 157, § 2142, at 158 (2d. ed.1994)).[9] Fed.R.Evid. 801(d)(2)(D) and RCFC 32(a) regulate the admissibility of depositions in different ways by allowing admission in differing circumstances:

> To some extent, the Rules of Evidence expand the admissibility of depositions beyond areas that are governed by Rule 32, or regulate admissibility with greater detail. Under the Federal Rules of Evidence, for example:
>
> . . .
>
> Admissions at a deposition by a party-opponent's agent or servants-other than that party's officer's, directors, managing agents, and Rule 30(b)(6) or 31(a) deponents-are admissible under Rule 801(d)(2)(D) to the extent they concern matters within the scope of the agency or employment . . . .

James Wm. Moore, *Moore's Federal Practice* § 32.02[3], at 32–16 to 32–17 (3d ed.2004). *See also id.* § 32.21[2][a], at 32–25 ("Rule 801(d)(2)(D) provides specifically for the admission of a statement by a party's *agent or servant* concerning a matter within the scope of the agency or employment, made during the existence of the relationship, while Rule 32(a)(2) is not so limited.") (footnote omitted).

That the requirements of Fed.R.Evid. 801(d)(2) are independent of those of RCFC 32(a) is also indicated in this Court's case management procedures, which specify that a separate motion be filed for admission of a deposition pursuant to RCFC 32(a) but not under Fed.R.Evid. 801(d)(2). *See* RCFC App. A, ¶ 15(b) ("Any party intending to present substantive evidence by way of deposition testimony, *other than as provided by Federal Rule of Evidence 801(d),* shall serve and file a separate motion for leave to file the transcript of this testimony.") (citing RCFC 32(a)(2) & (3) (emphasis added)). Moreover, the text of Rule 32(a) itself acknowledges that "[a] deposition previously taken may *also* be used as permitted by the Federal

Rules of Evidence." RCFC 32(a)(4) (emphasis added). Finally, courts have read the Federal Rules of Evidence, including Rule 801(d)(2), as providing a basis for admission of a deposition independently of RCFC 32(a). *See, e.g., Angelo v. Armstrong World Indus., Inc.,* 11 F.3d 957, 962–63 (10th Cir.1993) ("Deposition testimony is normally inadmissible hearsay, but Fed.R.Civ.P. 32(a) creates an exception to the hearsay rules. Depositions may also be independently admissible under the Federal Rules of Evidence." (internal citations omitted)); *Glendale Fed. Bank, FSB v. United States,* 39 Fed.Cl. 422, 425 (1997) (admitting expert witness' deposition testimony "as admissions against the Defendant" pursuant to Fed.R.Evid. 801(d)(2)(C) without referring to RCFC 32(a)); *Coleman,* 912 F.Supp. at 1295 ("If in fact the [deposition] excerpts fall within [Fed.R.Evid. 801(d)(2)(C) or (D)], they are not hearsay and Fed.R.Civ.P. 32 has no application to their admissibility."); *GTE Prods. Corp. v. Gee,* 115 F.R.D. 67, 69 (D.Mass.1987) ("the party noticing the depositions of non-managing agents and servants retains the right to seek to have the testimony admitted against the corporate party at trial either pursuant to Rule 32(a)(2), F.R.Civ.P. or Rule 801(d)(2)(D), F.R.Evid."); *United States v. International Bus. Machs. Corp.,* 90 F.R.D. 377, 384 (S.D.N.Y.1981) (Fed.R.Civ.P. 32 and Fed.R.Evid. 804 "are independent bases for the admission of a deposition"). *But see Kolb,* 109 F.R.D. at 127.

Because Fed.R.Evid. 801(d)(2) provides an independent ground for admission of deposition testimony, Globe and Phoenix may introduce portions of Mr. Reidhill's deposition to the extent the requirements of that Rule have been satisfied.

### 3. *Globe and Phoenix satisfy the requirements of Fed.R.Evid. 801(d)(2)(D).*

■ It is a "widely accepted rule that admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility." *Aliotta v. National R.R. Passenger Corp.,* 315 F.3d

---

9. Fed.R.Civ.P. 32 is identical to RCFC 32, save for some exceptions not pertinent to this case.

*See* RCFC 32 rules committee note.

756, 761 (7th Cir.2003). The deposition testimony that Globe seeks to introduce meets the three requirements of Fed.R.Evid. 801(d)(2)(D).

First, Mr. Reidhill's deposition testimony constitutes an admission because it is "offered against a party," Fed.R.Evid. 801(d)(2), in this case the United States. "To qualify as an admission, no specific 'against interest' component is required." *Aliotta*, 315 F.3d at 761 (citing *United States v. McGee*, 189 F.3d 626, 631 (7th Cir.1999) (observing that there is no "requirement that admissions by a party-opponent be inculpatory" and that "the statement need only be made by the party against whom it is offered")).

Second, Mr. Reidhill's statements "concern[ ] a matter within the scope of [his] agency or employment." Fed.R.Evid. 801(d)(2)(D). "The only requirement is that the subject matter of the admission match the subject matter of the employee's job description." *Aliotta*, 315 F.3d at 762. The subject matter of Mr. Reidhill's testimony focuses on three types of analyses performed by the Analysis and Evaluation Division ("AED") of the Federal Savings and Loan Insurance Corporation ("FSLIC") at the time he was Director of AED. Pls.' Reidhill Mot., Ex. A at 10–11; Def.'s Opp'n to Pls.' Reidhill Mot. at 4, 9. The matters about which Mr. Reidhill testified were manifestly within the scope of his employment.

Third, Mr. Reidhill made the statements at issue "during the existence of [his] relationship" with the United States. Fed.R.Evid. 801(d)(2)(D). It is immaterial that at the time of Mr. Reidhill's deposition FSLIC no longer existed and that he was head of the Policy Research Section of the FDIC. The Rule expressly concerns the declarant's relationship with the party-opponent, which in this case is the United States, not a particular agency. *See United States v. Barile*, 286 F.3d 749, 758 (4th Cir.2002) ("If [defendant] can lay a foundation for the statements, they are admissible over any hearsay objection because [the declarant] made them in her capacity as a government official on matters within the scope of her employment, and as

such, the statements are of a party-opponent and therefore not hearsay."); *Myers Investigative and Sec. Servs., Inc. v. United States*, 47 Fed.Cl. 288, 295 (2000) ("The court finds that [the declarant's] statements concern matters within the scope of his employment as [administrative contracting officer], and therefore constitute admissions.") (citing *Clark v. United States*, 8 Cl.Ct. 649, 651 n. 1 (1985) ("statements of United States government officials concerning a matter within the scope of their employment are not hearsay")); *Ryan–Walsh, Inc. v. United States*, 39 Fed.Cl. 305, 306 (1997) (deposition testimony of contracting officer and assistant contracting officer admissible under Rule 801(d)(2)(1)); *Corrigan v. United States*, 609 F.Supp. 720, 727 n. 3 (E.D.Va.1985) ("The disputed statements were offered against the United States, and were made by an agent or servant of the United States, [the declarant], concerning a matter within the scope of her employment. [The declarant's] statements were made while she was still an employee of the United States. Therefore, each element of Rule 801(d)(2)(D) has been met."), *judgment rev'd on other grounds*, 815 F.2d 954 (4th Cir.1987); *United States v. American Tel. & Tel. Co.*, 498 F.Supp. 353, 358 (D.D.C. 1980) ("The adversaries in this litigation are not the Department of Justice and the Legal Office of AT & T; they are the United States of America and the American Telephone and Telegraph Company, Western Electric Company, and Bell Telephone Laboratories.").

In short, Mr. Reidhill's deposition testimony is admissible against the United States as party-opponent under Rule 801(d)(2)(D).

*B.   RCFC 32(a)(2)*

■ Although Globe has established that Mr. Reidhill's deposition testimony is admissible through Fed.R.Evid. 801(d)(2)(D), the Court has also examined whether RCFC 32(a)(2) provides an alternative route to admissibility. Based upon Globe's showing, the Court concludes that RCFC 32 is not available for this purpose. In particular, Globe has not made an adequate showing that Mr. Reidhill was a "managing agent," RCFC 32(a)(2), at any time during his employment with the United States.[10]

10.  Most courts follow a three-part test for determining whether a deponent was a "managing agent" at the time of his or her deposition:

Globe avers that "Mr. Reidhill has held various high-level positions with the defendant since the 1980s, when he served as Director of [AED]" within FSLIC. Pls.' Reidhill Mot. at 3. However, Globe describes his duties only at FSLIC. *See id.* Unlike Fed.R.Evid. 801(d)(2)(D), "[t]he test [for Rule 32(a)(2) ] is not what a person has been in relation to an organization, but what the person was at the time the deposition was taken." 7 *Moore's Federal Practice* § 32.21[2][c], at 32–26 (citing *Bon Air Hotel, Inc. v. Time, Inc.*, 376 F.2d 118, 121 (5th Cir.1967)). Importantly, "whether witnesses fall within the category of 'managing agent' under Rule 32(a)(2) requires a determination of what the employee actually did, rather than what title or position she held." *Young & Assocs.*, 216 F.R.D. at 523. As previously discussed, at the time Mr. Reidhill's deposition was taken, he was "head of the Policy Research Section of the FDIC." *Supra*, at 93. Yet the record before the Court is bereft of any information describing what Mr. Reidhill "actually did" in that capacity. *See Young & Assocs.*, 216 F.R.D. at 523.

Rule 32(a)(2) "should be liberally construed." 8A Wright *et al., Federal Practice and Procedure* § 2145, at 170. In that vein, the Rule has been construed very broadly by some courts:

> [c]ourts have accorded managing agent status to individuals who no longer exercised authority over the actions in question

> First, the employee should be a person invested by the corporation with general powers to exercise his judgment and discretion in dealing with corporate matters. Second, the employee should be a person who could be depended upon to carry out his employer's direction to give testimony at the demand of a party engaged in litigation with the employer. Third, the employee should be a person who can be expected to identify himself with the interests of the corporation rather than with those of the other parties.
>
> *Reed Paper Co. v. Procter & Gamble Distrib. Co.*, 144 F.R.D. 2, 4 (D.Me.1992) (internal quotation marks omitted). *See also Young & Assocs. Pub. Relations, L.L.C. v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 523 (D.Utah 2003) (applying similar factors); 7 *Moore's Federal Practice* § 30.03[2], at 30–19 to 30–20; 8A Wright *et al., Federal Practice and Procedure* § 2103, at 39–41. Additionally,

(and even to individuals who no longer held any position of authority in a corporation), so long as those individuals retained some role in the corporation or at least maintained interests consonant with rather than adverse to its interests.

*Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1456 (D.C.Cir.1986). *See generally* 7 *Moore's Federal Practice* § 30.03[2], at 30–20 to 30–21, § 32.21[2][c], at 32–26 to 32–27; 8A Wright *et al., Federal Practice and Procedure* § 2103, at 43–44.[11] However, even if the expansive interpretation of Rule 32(a) reflected in *Church of Scientology* is accepted, a party seeking to introduce deposition testimony at trial pursuant to that Rule is not relieved from establishing that the deponent had decision-making authority within the pertinent governmental agency at a key time and kept a responsible position within the agency or at a successor or sister agency at the time of the deposition. As in other cases, "under the evidence presented in this case the following consideration is of particular importance: whether the employee's authority included exercising his or her personal discretion in making decisions without obtaining additional authorization from superiors in dealing with corporate matters." *Young & Assocs.*, 216 F.R.D. at 523.

Globe has not satisfied this consideration. The record shows that the division of AED within FSLIC of which Mr. Reidhill was

> [t]wo other factors sometimes mentioned by the courts include: (1) whether any persons are employed by the corporation in positions of higher authority than the individual designated in the area for which information is sought by the deposition, and (2) the general responsibilities of the individual respecting the matters involved in the litigation.
>
> 7 *Moore's Federal Practice* § 30.03[2], at 30–20.

11. "However, since [Rule 32(a)(2) ] plainly requires active service in the appropriate capacity at the time of the deposition, it is probably more accurate to say that the court has discretion to permit the use of the former employee's deposition at the trial or hearing on the theory that he or she in fact remained an 'agent or servant' within Evidence Rule 801(d)(2)(D) even though Rule 32(a)(2) was not satisfied." 7 *Moore's Federal Practice* § 32.21[2][c], at 32–26 (quoting Fed. R.Evid. 801(d)(2)(D)).

director was "responsible" for "three types of analyses ... —the liquidation cost analysis, the bid cost analysis, and the viability analysis." Pls.' Reidhill Mot., Ex. A at 10:21–25, 11:1–4. These analyses "provide[d] critical information during negotiations: they are financial guideposts to the negotiators." *Id.*, Ex. B at 2 (Memorandum from Jack Reid,[12] Director, AED, to Stuart Root, Acting Director, FSLIC (Nov. 17, 1987)). In other words, AED "provide[d] an integral line operation" to the decision-makers at FSLIC. *Id.* This evidence is not sufficient to demonstrate that Mr. Reidhill had "discretion to make decisions for the corporation without approval and authorization from higher authority." *Young & Assocs.*, 216 F.R.D. at 524. He was not a managing agent of FSLIC in the 1980s, and there is no evidence that he was a managing agent of FDIC at the time of his deposition.

In sum, the portions of Mr. Reidhill's deposition testimony identified by plaintiffs, Pls.' Reidhill Mot. at 4, are admissible at trial pursuant to Fed.R.Evid. 801(d)(2)(D), but not RCFC 32(a)(2).[13]

## II. The Ross Motion

█ Globe has filed an *in limine* motion seeking to preclude David J. Ross from testifying at trial. Globe notes that the government initially retained Mr. Ross to respond to Globe's cost-of-replacement-capital claim, Pls.' Ross Mot., Ex. A at ¶ 10, on which this Court granted summary judgment in favor of the government. *Globe Sav. Bank*, 59 Fed.Cl. at 97. For that reason, Globe argues that Mr. Ross's testimony is irrelevant "in so far as it would concern only a now-moot damages theory." Pls.' Ross Mot. at 3. The government agrees with this observation and represents that Mr. Ross will not testify as to that matter, Def.'s Opp'n to Pls.' Ross Mot. at 1, 5, but indicates its intention to call Mr. Ross to testify at trial with respect to a mitigation defense to be proffered by the government. *Id.* at 1–5, 7–8. In reply, Globe contends that Mr. Ross's testimony in this regard would also not be rele-

vant. Pls.' Reply in Supp. of Pls.' Ross Mot. at 1–2. First, Globe suggests that this Court's decision denying in part and granting in part the government's motion for summary judgment on damages in this case precludes the government from raising mitigation as an affirmative defense. *Id.* at 2. Second, the mitigation theory that will be raised by the government apparently consists of the contention that it would have been more reasonable for Globe to compensate for the loss of regulatory goodwill as capital by raising capital to support its operations rather than by shrinking to the point of liquidation. Globe asserts that any testimony concerning Globe's ability to raise capital subsequent to the government's breach would not be relevant to satisfying the government's burden to prove that Globe's actual mitigation strategy was unreasonable. *Id.*

Fed.R.Evid. 702 requires, among other things, that testimony by an expert witness "assist the trier of fact to understand the evidence or to determine a fact in issue." As the Supreme Court has observed, "[t]his condition goes primarily to relevance." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. "The Rule's basic standard of relevance is thus a liberal one." *Daubert*, 509 U.S. at 587, 113 S.Ct. 2786. Additionally, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Fed.R.Evid. 402.

Rule 702 requires a preliminary determination, pursuant to Fed.R.Evid. 104(a), that the proffered expert testimony is both reliable and relevant. *Daubert*, 509 U.S. at 592–

---

12. Mr. Reidhill changed his name in 1989. Pls.' Reidhill Mot., Ex. A at 7:25–8:4.

13. If Mr. Reidhill does not testify as a live witness at trial, which appears to be a distinct

possibility, the government is granted leave to identify other portions of Mr. Reidhill's deposition to be admitted beyond those designated by Globe.

93, 113 S.Ct. 2786; *see also id.* at 589, 594–95, 113 S.Ct. 2786.[14] Globe has questioned only the relevance of Mr. Ross's proffered expert testimony. Its arguments in that regard lack merit.

First, this Court has not barred the government from raising mitigation as a defense at trial. Instead, the Court's most recent opinion states plainly that the government had not previously put forward a mitigation defense:

> The government has raised *no claim* that Globe's actions to mitigate the breach were other than reasonable. Given the contemporaneous findings by OTS's and FDIC's examiners that Globe's actions to shrink by selling assets and deposit liabilities were "impressive," any such mitigation claim would seemingly be unavailing *on this record.*

*Globe Sav. Bank,* 59 Fed.Cl. at 96 n. 13 (internal citation omitted, emphasis added). In Globe's citation to this footnote in its reply in support of its *in limine* motion, Globe omits the first sentence as well as the words "on this record." *See* Pls.' Reply in Supp. of Pls.' Ross Mot. at 2. The government was not obliged to raise a mitigation defense at the earlier motions stage, and nothing in those prior proceedings precludes it from doing so now.

Second, the government has met its burden to show that Mr. Ross's proffered testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Evidence that Globe could have raised capital might tend to call into question the reasonableness of its shrinkage strategy, notwithstanding the success of that strategy. *See* Fed.R.Evid. 401; *see also id.,* advisory committee's note (1972 Proposed Rules) ("Dealing with probability in the language of the rule has the added virtue of avoiding confusion between questions of admissibility and questions of the sufficiency of the evidence."). The government has the burden at trial to show that Globe's attempts at substitute performance were unreasonable, *see, e.g., Long Island Sav. Bank, FSB v. United States,* 60 Fed.Cl. 80, 90 (2004), and the government is entitled to undertake that effort. It may prove to be difficult for the government to satisfy its burden of showing that Globe's efforts at mitigation were unreasonable by showing that other reasonable options were available. *See id.* at 90 (quoting *Home Sav. of Am., FSB v. United States,* 57 Fed.Cl. 694, 729 (2003), for the proposition that the breaching party "can not complain that one [mitigation option] rather than the other was chosen"). However, difficulty does not equate to impossibility in this context. Accordingly, Globe's *in limine* motion to preclude Mr. Ross's expert testimony is denied. *See Columbia First Bank, FSB v. United States,* 58 Fed.Cl. 333, 341 (2003) (denying motion to exclude expert testimony on grounds of redundancy, with the possibility that the Court would reevaluate that decision at trial).

### III. The New Witnesses Motion

■ Globe has filed an additional *in limine* motion seeking to preclude the government from calling as witnesses at trial Jeffrey L. Meyer and Cheryl Petty, both of whom are employees of the Office of Thrift Supervision ("OTS"). The thrust of Globe's position is that the government failed both to disclose the identity of these employees as required by the *Winstar*-related case management orders and RCFC 26(a)(1)(A) and to amend its disclosure as required by RCFC 26(e)(1). Pls.' New Witnesses Mot. at 1–5; Pls.' Reply in Supp. of Pls.' New Witnesses Mot. at 4.[15] Consequently, in Globe's

---

**14.** Fed.R.Evid. 104(a) provides:

> Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b) [pertaining to conditional relevancy]. In making this determination it is not bound by the rules of evidence except those with respect to privileges.

The proponent has the burden of showing that these requirements are established by a preponderance of the evidence. *Daubert,* 509 U.S. at 592 n. 10, 113 S.Ct. 2786 (citing *Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)).

**15.** Procedural Order No. 2 was issued on August 11, 1997, by then-Chief Judge Smith to govern common discovery with respect to the "First Thirty" group of *Winstar*-related cases. The or-

view, RCFC 37(c)(1) should apply to preclude Mr. Meyer and Ms. Petty from testifying at trial. Pls.' New Witnesses Mot. at 5–6; Pls.' Reply in Supp. of Pls.' New Witnesses Mot. The government counters that it made a timely disclosure of these witnesses pursuant to RCFC Appendix A, paragraph 13(b), which provides that at the meeting of counsel no later than 63 days before the pretrial conference, a final list of witnesses shall be exchanged. Def.'s Opp'n to Pls.' New Witnesses Mot. at 1–3. Under this case management procedure, "[a]ny witness whose identity has not been previously disclosed shall be subject to discovery." RCFC App. A, ¶ 13(b).

In the circumstances of this case, the government is not precluded by the Rules or Orders of this Court from calling Mr. Meyer or Ms. Petty as part of its rebuttal case. Initial disclosure is required only of "each individual likely to have *discoverable* information that the disclosing party may use to support its claims or defenses." RCFC 26(a)(1)(A) (emphasis added). "Discoverable information" is defined as "any matter, not privileged, that is relevant to the claim or defense of any party." RCFC 26(b)(1). Generally, discoverable information required to be initially disclosed includes the identity of potential witnesses. *See* Fed.R.Civ.P. 26 advisory committee's note (1993 amend.). In this case, however, as Globe observes, the government has represented that Mr. Meyer and Ms. Petty would testify not about their regulation of Globe specifically, but rather their regulation of other particular thrifts. Pls.' New Witnesses Mot. at 6–7; *see also* Def.'s Opp'n to Pls.' New Witnesses Mot. at 5. Because the prior procedural orders did not preclude supplementation, *see Hansen Bancorp, Inc. v. United States*, 51 Fed.Cl. 737 (2002), and because the topics to be addressed are not directly related to plaintiff Globe, the Court will not strike the two newly named witnesses from the government's list.

This is not to say that the Court now rules that the testimony of these two newly named witnesses will necessarily be deemed relevant and admissible at trial. The government represents that "[t]he testimony of Mr. Meyer and Ms. Petty is potentially important to our rebuttal of plaintiffs' case-in-chief." Def.'s Opp'n to Pls.' New Witnesses Mot. at 5. In that regard, the government is correct that "[s]ince we cannot be certain what evidence plaintiffs will submit during their case-in-chief, it is not possible for us, *at this time*, to know precisely how relevant and how critical the testimony of these two witnesses will be." *Id.* The Court reserves ruling on this issue of relevancy until Globe completes its case-in-chief and the government gives notice that it wishes to call the witnesses. *See* Fed.R.Evid. 402 and 403.

Finally, Globe is not prejudiced by the fact that it did not learn of these potential witnesses' identity until the meeting of counsel on April 21, 2004. At that time, there were eleven weeks remaining before trial, and several weeks still remain. Globe may depose these two witnesses during that time pursuant to RCFC Appendix A, paragraph 13(b). Moreover, taking those depositions presumably would not occupy an undue amount of Globe's counsel's time, given the limited focus of these witnesses and the fact that the government has represented the expected time for its potential examination of Mr. Meyer and Ms. Petty as one hour each. Def.'s Witness List Pursuant to App. A at 6.

## IV. The Potter Motion

■ Globe's final motion seeks authorization to take the deposition of Harry Potter,

---

der required the government to disclose the name and title of any current or former government employee, agent, or representative likely to have discoverable information, within the first thirty days of case-specific fact discovery. All-*Winstar* Procedural Order No. 2: Discovery Plan ¶ IV.A.1 (Aug. 11, 1997). In the instant case, May 1998 was the relevant time period for such disclosures. Procedural Order No. 2 also provides that the Rules of the Court of Federal Claims govern discovery, except where in con-

flict with other orders issued in the context of the *Winstar* proceedings. *Id.* ¶ 1.B.

RCFC 26(a)(1)(A) provides that a party must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information." Thus, the standard governing disclosure under this Rule is the same as that specified in Procedural Order No. 2.

whom Globe retained as a business consultant in the 1980s and asked to serve on its board of directors. Pls.' Potter Mot., Ex. C at 4 (Def.'s Initial Witness and Ex. Lists Pursuant to App. A, ¶¶ 13(A) and (B)). Globe listed Mr. Potter in its initial disclosures in May 1998, but it did not put him on its witness list for trial. Pls.' Potter Mot. at 1. The converse is true for the government. Although the government did not list him in its own initial disclosures, it has included him in its April 21, 2004, witness list for trial, as the government was entitled to do. *See* RCFC App. A, ¶ 13(b). Now, Globe wants to depose Mr. Potter. The government does not oppose Globe's motion, but it seeks an order that the deposition time be limited to four hours in duration. Def.'s Resp. to Pls.' Potter Mot. at 1, 4–5.

The government's request for curtailment of deposition time for Mr. Potter is not justified. It has not shown good cause for altering the presumptive duration of seven hours for a deposition set out in RCFC 30(d)(2). *See* Fed.R.Civ.P. 30(d)(2) advisory committee's note (2000 amend.) ("Paragraph (2) imposes a presumptive durational limitation of one day of seven hours for any deposition.... The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order."). *See generally Independence Park Apartments v. United States*, 59 Fed.Cl. 765, 769 (2004). The government has not demonstrated that it or Mr. Potter would be harmed by a difference of three hours of deposition time in one day.

## V. Conclusion

For the reasons stated above, it is hereby **ORDERED** that (a) the Reidhill Motion is granted, (b) the Ross Motion is denied, (c) the New Witnesses Motion is denied, and (d) the Potter Motion is granted.