# United States Court of Appeals for the Federal Circuit

2006-5102

CITY LINE JOINT VENTURE,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Gerson B. Kramer, of Silver Spring, Maryland, argued for plaintiff-appellant.

Kenneth M. Dintzer, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were Peter D. Keisler, Assistant Attorney General, Brian M. Simkin, Assistant Director, and Sean M. Dunn, Trial Attorney.

Appealed from: United States Court of Federal Claims

Senior Judge John P. Wiese

# United States Court of Appeals for the Federal Circuit

2006-5102

CITY LINE JOINT VENTURE,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED: September 27, 2007

_____

Before RADER, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and MOORE, <u>Circuit Judge</u>.

MOORE, <u>Circuit Judge</u>.

City Line Joint Venture (City Line) appeals from a grant of summary judgment to the government on City Line's breach of contract claim and a separate judgment that no regulatory taking resulted from the government's action. We conclude that the Court of Federal Claims' grant of summary judgment to the government on the breach of contract claim was improper because its reliance on the sovereign acts doctrine as a basis for excusing the government's breach is misplaced. Therefore, we reverse the trial court's grant of summary judgment of no breach of contract, and remand for further proceedings on this claim.

## BACKGROUND

City Line developed a multi-family rental housing project in Maryland in 1968 with a Department of Housing and Urban Development (HUD)-insured loan. HUD provided mortgage insurance for private lenders that entered into low-interest forty-year

mortgages with property owners that would subject themselves to a scheme of restrictions on their investment in, use, and sale of low-income housing projects. Under the housing programs established by section 221(d)(3) of the National Housing Act, City Line received a loan from a private lender, Riggs Bank, to construct a housing project. The secured note between Riggs Bank and City Line that covered the mortgage loan contained a provision that prohibited prepayment of the mortgage before twenty years from the date of final endorsement of the note by the Federal Housing Commissioner without prior approval by HUD—after twenty years the mortgage could be prepaid without HUD approval. In return for the HUD-insured low-interest loan, City Line signed a Regulatory Agreement (RA) with HUD, in which it agreed to comply with various restrictions on its housing project such as limitations on tenant income, rental rates, and the permissible rate of return on initial equity to the investors. The RA further provided that it would bind City Line "so long as the contract of mortgage insurance continues in effect, and during such further period of time as the Commissioner shall be the owner, holder or reinsurer of the mortgage," or obligated to insure a mortgage on the property. Thus, the exercise of the prepayment right under the mortgage note would effectively terminate the RA and allow City Line to exit the program.

After the housing project was built, a supplemental note that contained the same restriction on prepayment was signed. The supplemental note brought the total amount of the mortgage up to $4,584,100 to cover a construction cost overrun. The original and supplemental notes were endorsed by the Federal Housing Commissioner on August 30, 1971. On August 27-30, 1971, Riggs Bank sold the mortgage to the Government National Mortgage Association (GNMA). After GNMA assumed the mortgage, City Line

ran into financial difficulties. Despite entering into a series of workout agreements with GNMA to adjust the mortgage and bring its loan payments up to date, City Line defaulted on the loan and GNMA assigned its rights to the mortgage to the insurer HUD. HUD then assumed the mortgage and became the lender. After several additional workout agreements between HUD and City Line, and an influx of additional capital from new partner Brunswick Management Company and the existing partners of City Line, the project stabilized and the mortgage arrears were eliminated.

Between 1988 and 1996, Congress enacted various statutes related to preservation of low-income multi-family housing built during the 1960s-1970s that were insured with these forty-year government-insured mortgage loans issued for below-market rates. See Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, § 202, 100 Stat. 1877 (1988) (ELIHPA); Low Income Housing Preservation and Resident Homeownership Act of 1990, Pub. L. 101-625, tit. VI, 104 Stat. 4249 (1990) (LIHPRHA); Housing Opportunity Program Extension Act of 1966, Pub. L. No. 104-120, 110 Stat. 834 (1996) (HOPE). These statutes have been discussed in exhaustive detail in other opinions relating to claims brought against the government because of Congress' enactment of these laws.[1] LIHPRHA, the statute at issue in this case, disallowed prepayment of mortgages entered into under these types of agreements after twenty years without HUD approval and put additional requirements in place for HUD approval of prepayment or sale of the property. Later, the 1996 HOPE Act restored prepayment rights to City Line and other owners that had not entered into

---

[1] For a detailed discussion of the statutory scheme and the relevant legislative enactments see Cienega Gardens v. United States, 331 F.3d 1319 (Fed. Cir. 2003) and Chancellor Manor v. United States, 331 F.3d 891 (Fed. Cir. 2003).

use agreements (which City Line did not).  As of April 29, 1996, City Line was again allowed to prepay its mortgage and exit the program, though the statute prevented it from raising the rents for an additional two months after it prepaid (restricted until at least June 26, 1996).  City Line filed suit at the Court of Federal Claims in November 1996, seeking damages for breach of contract or, alternatively, for just compensation under the Fifth Amendment for a regulatory taking.  On August 13, 1997, City Line prepaid the mortgage on its housing project, thereby exiting the program.

ANALYSIS

City Line asserts that the trial court erred as a matter of law when granting summary judgment in favor of the government on the breach of contract claim.  City Line alleges that enactment of LIHPRHA and HUD's enforcement of this act was an unlawful denial of City Line's contractual right to prepay its mortgage after twenty years and exit the program.  In 2001, the trial court held on summary judgment that the enactment of LIHPRHA was a "public and general act" and applied the sovereign acts doctrine as a defense to the breach of contract claim as a matter of law.  We review a grant of summary judgment <u>de novo</u>.  <u>Cienega Gardens v. United States</u>, 331 F.3d 1319, 1329 (Fed. Cir. 2003) (<u>Cienega VIII</u>).

The government does not contest the fact that City Line was in privity of contract with the government at the time that LIHPRHA was enacted in 1990 and on August 31, 1990 when it was contractually entitled to exercise its prepayment right.  Because the mortgage and note were assigned to HUD in 1977, HUD was a party to the mortgage agreement which allowed prepayment without HUD approval after twenty years.  Unlike other cases involving these statutes where the court found no breach of contract

because HUD was not a party to the mortgage agreements, City Line has a viable breach of contract claim because it was in privity with respect to the contractual prepayment right. See Cienega Gardens v. United States, 194 F.3d 1231, 1243 (Fed. Cir. 1998) (Cienega IV); Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003). In Cienega IV, we noted that a finding of privity of contract is to find a waiver of sovereign immunity. 194 F.3d at 1239. LIHPRHA prevented HUD's performance under the original and supplemental notes by prohibiting prepayment, in violation of the terms of the mortgage notes HUD assumed by assignment. The trial court determined, however, that Congress' subsequent enactment of LIHPRHA made HUD's performance duty impossible due to a change in the governing law, and under standard contract law and the impossibility defense, the duty was discharged.

Since the trial court applied the sovereign acts doctrine in 2001 to forgive HUD's performance of the prepayment clause this court has considered the sovereign acts doctrine with respect to Congress' enactment of both ELIHPA and LIHPRHA. In Cienega VIII, we analyzed both ELIHPA and LIHPRHA and their effect on low income property owners that had loan agreements with private lenders or HUD. We considered the Supreme Court's guidance in Winstar in analyzing the availability of the impossibility defense:

> If the Government is to be treated like other contractors, some line has to be drawn in situations like the one before us between regulatory legislation that is relatively free of Government self-interest and therefore cognizable for the purpose of a legal impossibility defense and, on the other hand, statutes tainted by a governmental object of self-relief. Such an object is not necessarily inconsistent with a public purpose, of course, and when we speak of governmental "self-interest," we simply mean to identify instances in which the Government seeks to shift the costs of meeting its legitimate public responsibilities to private parties.

331 F.3d at 1334 n.27 (quoting Winstar v. United States, 518 U.S. 839, 896 (1996)).  In Cienega VIII, we held that the enactment of ELIHPA and LIHPRHA directly and intentionally abrogated the mortgage prepayment clauses.  331 F.3d at 1334.  We determined that the statutes' effects on the low-income housing project owners contracts was not merely a consequential loss resulting from the lawful exercise of the government's police power, but rather "legislation aimed at the contract rights themselves in order to nullify them."  Id. at 1335.  While this analysis of ELIHPA and LIHPRHA occurred in the takings context, our reasoning and understanding of their effects have equal relevance to the application of the sovereign acts doctrine as applied to a breach of contract claim with respect to the same legislative enactments.  The government cannot avail itself of the impossibility defense to save it from this breach of contract claim.  We reverse the trial court's grant of summary judgment on the breach of contract claim and remand for further proceedings on this claim.

Because we are remanding for further consideration of the breach of contract claim, we will not consider the trial court's disposition of the takings claim at this time.  When a viable contract claim exists, we should not reach out to decide the takings issue.  Clearly, there should not be double recovery, we should not commingle takings compensation and contract damages.  In Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002), this court stated that "despite breaching the contract, the government did not take the plaintiffs' property because they retained 'the range of remedies associated with the vindication of a contract.'"  Instead of conferring a right protected from a taking, "the contract promised to either regulate [plaintiffs] consistently with the contract's terms, or to pay damages for breach."  Id.; see also Winstar, 518 U.S. at 919

(Scalia, J., concurring) ("Virtually <u>every</u> contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance: 'The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it, and nothing else.'"). Here, City Line possesses the full range of remedies associated with its contractual property rights, and we leave it to the Court of Federal Claims to determine the appropriate contractual remedy for City Line on remand.

<u>REVERSED and REMANDED</u>