**CITY LINE JOINT VENTURE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 96–738C.

United States Court of Federal Claims.

June 19, 2008.

## OPINION

WIESE, Judge.

In an earlier phase of this litigation, the court ruled that plaintiff was not entitled to contract damages because the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA"), Pub.L. No. 100–242, tit. II, 101 Stat. 1877 (1988) (relevant sections reprinted at 12 U.S.C. § 1715*l* note (2000)) and the Low–Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA"), Pub.L. No. 101–625, tit. VI, 104 Stat. 4249 (1990), were sovereign acts that rendered the government's performance impracticable and thus relieved the government of its obligations under the contract. *City Line Joint Venture v. United States*, 48 Fed.Cl. 837 (2001). That holding, however, was overruled by the United States Court of Appeals for the Federal Circuit in *City Line Joint Venture v. United States*, 503 F.3d 1319 (Fed.Cir.2007), in which the court concluded that plaintiff "possesses the full range of remedies associated with its contractual property rights" and remanded the matter for further proceedings. *Id.* at 1323–24.[1]

The case is now before the court on the parties' cross-motions for judgment on the record as to liability. For the reasons set forth below, plaintiff's motion is granted and defendant's cross-motion is denied.

## I.

During the period relevant to this litigation (1991–1997), plaintiff owned and operated a 283–unit rental housing project constructed in 1968 with the aid of below-market mortgage financing provided under section 221 of the National Housing Act of 1954, Pub.L. No. 83–560, 68 Stat. 590, 599–601 (codified as amended at 12 U.S.C. § 1715*l* (d)(3) (2000)) (the "section 221 program").[2] Pursuant to

Gerson B. Kramer, Silver Spring, MD, attorney of record for plaintiff.

Sean M. Dunn, with whom were Acting Assistant Attorney General Gregory G. Katsas, Director Jeanne E. Davidson, and Assistant Director Brian M. Simkin, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant.

1. Although plaintiff also appealed this court's decision following trial that plaintiff had not suffered a compensable taking under the Fifth Amendment, *City Line Joint Venture v. United States*, 71 Fed.Cl. 486, 501 (2006), the Federal Circuit declined to reach that issue based on the availability of a contract remedy, *City Line*, 503 F.3d at 1323.

2. The history of the government's efforts to ensure the supply of affordable low-income housing and plaintiff's participation in the government's mortgage insurance program under the section 221 program is detailed more fully in this court's two earlier opinions in this action, *City Line*, 48 Fed.Cl. at 838–41 (rejecting plaintiff's contract claim), and *City Line*, 71 Fed.Cl. at 487–90 (rejecting plaintiff's takings claim), and in the Fed-

the secured note executed at the initial closing of the loan for this project, plaintiff was entitled to prepay its mortgage—and thereby exit the section 221 program—as follows:

> The debt evidenced by this note may not be prepaid either in whole or in part prior to 20 years from the date of final endorsement of this note by the Federal Housing Commissioner without the prior written approval of the Commissioner; thereafter, the debt evidenced by this note may be prepaid either in whole or in part without the approval of the Commissioner.

The Department of Housing and Urban Development ("HUD") provided the final endorsement of the note on August 30, 1971, and plaintiff was thus eligible to prepay its mortgage as of August 30, 1991.

On February 5, 1988, Congress enacted ELIHPA, which had the effect of limiting the conditions under which section 221–insured loans could be prepaid. Specifically, ELIHPA required a property owner who sought to prepay a mortgage insured under the section 221 program to file a "notice of intent" to prepay followed by a "plan of action" describing, *inter alia*, the effect of any proposed changes on existing tenants. §§ 222, 223, 12 U.S.C. § 1715*l* note. HUD was in turn authorized under the statute to approve a plan of action only after the agency had made written findings that implementation of the plan would not adversely affect current tenants or materially "affect the availability of decent, safe, and sanitary housing" in the area. § 225(a), 12 U.S.C. § 1715*l* note.

On May 20, 1988, plaintiff received a circular letter from HUD advising project owners of the requirements for prepayment under ELIHPA. The circular contained a form titled "Notice of Intent" and designated three addressees for filing the notice. The circular went on to advise:

> If HUD receives your Notice of Intent, you will be sent a package of information needed to prepare a plan of action. This information will tell you what you will have to provide HUD and the standards and criteria regarding approval of the plan of action which would result in prepayment of

the mortgage and the termination of low-income affordability restrictions.

Plaintiff filed its notice of intent on December 19, 1990. In the attached cover letter, plaintiff advised that "[e]nclosed is our 'Notice of Intent' to pre-pay our mortgage under the Emergency Low–Income Housing Preservation Act (ELIHPA), Title II." The notice itself was captioned "INTENT TO PREPAY MORTGAGE" and stated the "plans for the project" as follows: "We are filing our 'Notice of Intent' under the Emergency Low–Income Housing Preservation Act (ELIHPA), Title II, and plan a sale to an independent party for the highest and best use."

Although the record is incomplete on this point, it appears that HUD did not respond to plaintiff's notice of intent to prepay and that plaintiff pursued no further action under either ELIHPA or LIHPRHA. On March 28, 1996, however, Congress enacted the Housing Opportunity Program Extension Act of 1996, Pub.L. No. 104–120, 110 Stat. 834 (1996) ("HOPE"), ending the restrictions imposed by ELIHPA and LIHPRHA by allowing a borrower to prepay a mortgage without prior HUD approval. Following the enactment of HOPE, plaintiff resubmitted its notice of intent to prepay its mortgage on June 15, 1996, and began to take the steps necessary to obtain a replacement, market-rate loan. Plaintiff filed suit in this court on November 21, 1996, and ultimately prepaid its HUD-insured mortgage on August 13, 1997.

### II.

In addressing the issue of liability in this case, the parties rely primarily on the Supreme Court's decision in *Franconia Assocs. v. United States*, 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002). Plaintiff reads *Franconia* as standing for the proposition that a borrower merely has to take an initial step in attempting to prepay its mortgage in order for the government's inaction to constitute a breach, a step plaintiff maintains it took by filing its December 19, 1990, notice of intent to prepay. Defendant, by contrast, argues that *Franconia* requires a borrower actually to tender payment before any obli-

eral Circuit's remand decision, *City Line*, 503 F.3d at 1320–22.

gation arises on the part of the government. In defendant's view, plaintiff's notice of intent to prepay, despite its title, signaled plaintiff's intent to sell its property to a qualified buyer pursuant to an option introduced by ELIHPA, rather than to prepay its mortgage, and cannot therefore be construed as an attempt to tender payment. In the absence of such payment, defendant maintains, the government had no obligation—and indeed no opportunity—to act, and thus did not breach its contractual duty.

We do not believe that defendant's position accurately reflects the Supreme Court's holding. In *Franconia*, the trial court dismissed a similarly situated plaintiff's breach of contract claim as untimely based on the court's conclusion that the claim had accrued on the effective date of ELIHPA's implementing regulations, more than six years before the plaintiff had filed suit. *Franconia Assocs. v. United States*, 43 Fed.Cl. 702, 709 (1999). On appeal, the Federal Circuit upheld the ruling that the suit was untimely, but identified the date of the statute's enactment, rather than the effective date of its implementing regulations, as marking the beginning of the statute of limitations period. *Franconia Assocs. v. United States*, 240 F.3d 1358, 1363 (Fed.Cir. 2001). It was in this context that the Supreme Court held that while ELIHPA "effected a repudiation of the ... loan contracts," it did not effect an immediate breach. *Franconia*, 536 U.S. at 143, 122 S.Ct. 1993. Rather, the Court concluded that the "breach would occur, and the six-year limitations period would commence to run, when a borrower tenders prepayment and the Government then dishonors its obligation to accept the tender and release its control over use of the property that secured the loan." *Id.* at 133, 122 S.Ct. 1993.

The *Franconia* Court went on to hold, however, that a borrower's *attempt* to prepay a mortgage was sufficient to trigger the government's duty to act, specifically noting that "[u]nless petitioners treated ELIHPA as a present breach by filing suit prior to the date indicated for performance, breach would occur when a borrower *attempted* to prepay, for only at that time would the Government's responsive performance become due." *Id.* at 143, 122 S.Ct. 1993 (emphasis added). The Court additionally observed in a footnote that "at least one petitioner has *attempted* to prepay." *Id.* at 143 n. 8, 122 S.Ct. 1993 (emphasis added).

Defendant explains away this language by asserting that the Court used the phrase "attempted to prepay" as synonymous with "tendering prepayment" (*i.e.*, that a borrower attempts to prepay by actually tendering payment). Defendant offers no support for this proposition, however, and we see no reason to impose such a limited definition on the word "attempt." While actually tendering prepayment is of course one method of attempting to prepay, nothing in *Franconia* identifies it as the only acceptable method. And plaintiff's filing of its notice of intent to prepay, we believe, constitutes just such an attempt.

By its very title—"Intent to Prepay Mortgage"—plaintiff's December 19, 1990, notice signaled an attempt to exercise plaintiff's rights under the contract. Significantly, the notice complied both with the terms of HUD's May 20, 1988, circular, setting forth the prerequisites for an owner to communicate its intent to prepay a mortgage, and with the requirements for prepayment requests expressly set forth in section 222 of ELIHPA. In submitting its notice of intent, plaintiff thus attempted to exercise its contractual right to prepay its mortgage while utilizing ELIHPA procedures to accomplish that end. The government's subsequent failure to permit prepayment and release its control over the use of the property that secured the loan constituted the very breach the *Franconia* Court envisioned.

It is additionally worth mentioning that this court ruled against defendant on essentially the same issue once before. Defendant asserted at trial that plaintiff's takings claim was unripe because plaintiff never attempted to prepay its mortgage during the years ELIHPA and LIHPRHA were in effect and the impact of those statutes on plaintiff's contractual right to prepay its mortgage was thus uncertain. We rejected that argument, concluding that "the evidence makes clear that HUD could not have made the factual findings necessary to allow plaintiff to prepay

its mortgage, thereby foreclosing the possibility of prepayment as a matter of law." *City Line Joint Venture v. United States*, 71 Fed. Cl. 486, 490 (2006). Similarly, we now find that plaintiff's attempt to prepay its mortgage by filing its notice of intent to prepay took plaintiff's contractual performance as far as practically possible under the prevailing conditions established by Congress. *Accord Cienega Gardens v. United States*, 503 F.3d 1266, 1272 n. 2 (Fed.Cir.2007) (concluding that the record supported the trial court's finding that "HUD could not make the factual findings that were a necessary predicate for prepayment approval," and thus observing that such prepayment "was not available to the owners as a practical matter"); *Cienega Gardens v. United States*, 265 F.3d 1237, 1249 (Fed.Cir.2001) (determining that the plaintiffs' takings claims were ripe for adjudication despite plaintiffs' failure to file prepayment requests with HUD since the court concluded such requests would have been futile).

Defendant argues in the alternative that any failure by HUD to respond to plaintiff's notice of intent at most constitutes a violation of ELIHPA—a grievance appropriately addressed under the Administrative Procedures Act—and not a breach of the parties' contract.[3] We cannot accept this argument. Just as plaintiff's notice of intent to prepay should be assessed in terms of plaintiff's original unqualified contract right to prepay and not in terms of the modifications imposed on that right by ELIHPA, so too should the government's failure to respond to that notice be viewed in original contract terms rather than simply as an administrative shortcoming under ELIHPA. Indeed, to permit defendant to invoke ELIHPA in defense of its action is to grant it the benefit of a position it had no contractual right to claim in the first instance.

### III.

Having concluded that defendant breached its contract with plaintiff, we now turn to damages. During the trial of its takings claim, plaintiff presented a lost revenue damages model contrasting the rents it earned between August 1991 and August 1997 with the fair market rents it could have earned for that period absent HUD restrictions. Adjusting the resulting figure—$1,786,854—for risk and the time value of money, plaintiff sought $2,144,931 in lost rental income. Defendant in turn presented evidence that plaintiff's property had suffered a $600,000 decrease in value as a result of HUD's restrictions.

After examining the evidence, this court accepted plaintiff's model but concluded that plaintiff's calculations erroneously excluded property upgrade costs (*i.e.*, expenses necessary to command fair market rents) and additional taxes, and that plaintiff employed an incorrect discount rate. The court thus made several adjustments to plaintiff's calculations to account for these factors, resulting in a value for the lost rents of $640,185. On appeal, plaintiff offered numerous challenges to the adjustments, but the Federal Circuit's holding rendered the resolution of the issue unnecessary. At our request, however, plaintiff has provided this court with a copy of its appellate brief addressing the adjustments to plaintiff's damages model. Subject to the guidance of counsel, this court now intends to use those objections as the basis for reevaluating our earlier calculations.

### CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment on the record is GRANTED and defendant's cross-motion is DENIED. On or before July 10, 2008, the parties shall contact the court to schedule follow-up proceedings.

---

**3.** Defendant acknowledges that the record is incomplete regarding HUD's response to plaintiff's notice of intent to prepay, but contends that HUD did not issue a final decision because plaintiff never completed the preservation process. The salient—and uncontested—point, however, is that HUD never authorized prepayment under either ELIHPA or LIHPRHA.