**CCA ASSOCIATES, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 97–334C.**

United States Court of Federal Claims.

July 8, 2009.

Elliot E. Polebaum, Fried, Frank, Harris, Shriver & Jacobson, LLP, Washington, D.C., for plaintiff. With him on the briefs was Eugene N. Hansen, Fried, Frank, Harris, Shriver & Jacobson, LLP, Washington, D.C.

Kenneth D. Woodrow, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant. With him on the briefs were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, and Elizabeth A. Speck, Trial Attorney, and David A. Harrington, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This case has a lengthy and somewhat tortuous history. It involves prepayment rights to a mortgage for a low-income housing project in Metairie, Louisiana. At this juncture, the parties are preparing for a retrial scheduled to commence on July 20, 2009, and issues regarding that retrial have arisen which require immediate resolution.

## BACKGROUND

Originally brought on May 13, 1997 as a breach-of-contract case with a secondary takings claim, see Compl. ¶¶ 38–40 (breach of contract), 41–43 (just compensation),[1] the action was stayed for a number of years to permit the Federal Circuit to clarify the law in pertinent respects by addressing the

---

1. The Answer, filed July 14, 1997, sets out a general denial to both counts. Ans. ¶¶ 43–45.

*Cienega Gardens* cases. *See Cienega Gardens v. United States,* 194 F.3d 1231 (Fed. Cir.1998) *("Cienega IV"); Cienega Gardens v. United States,* 265 F.3d 1237 (Fed.Cir. 2001) *("Cienega VI"); Cienega Gardens v. United States,* 331 F.3d 1319 (Fed.Cir.2003) *("Cienega VII"); Cienega Gardens v. United States,* 503 F.3d 1266 (Fed.Cir.2007) *("Cienega X").* After *Cienega VII* was decided by the Federal Circuit, essentially mandating that a judgment for contractual damages be reinstated as a temporary takings award, this case was prepared for trial and tried as a temporary takings case along the same lines as *Cienega VIII.* The post-trial decision in this case, *CCA Assocs. v. United States,* 75 Fed.Cl. 170 (2007), was rendered after *Cienega VII* but before *Cienega X. Cienega X* substantially recast the legal framework for and principles reflected in *Cienega VIII,* and on appeal in *CCA Associates* the Federal Circuit affirmed in part, vacated in part and remanded, relying on *Cienega X. See CCA Assocs. v. United States,* 284 Fed.Appx. 810 (Fed.Cir.2008). The Federal Circuit affirmed the trial ruling that the case was ripe for adjudication and vacated the merits of the takings analysis that led to a conclusion that a taking had occurred and that just compensation was due. *Id.* at 811. In its order of remand, the Court of Appeals stated that "[h]ere, as in *Cienega X,* the Court of Federal Claims 'should allow both sides to supplement the record with additional relevant evidence if they wish to do so.'" *Id.* (quoting *Cienega X,* 503 F.3d at 1291). After a petition for a writ of certiorari was denied, *see CCA Assocs. v. United States,* —— U.S. ——, 129 S.Ct. 1313, 173 L.Ed.2d 584 (2009), the remanded case was scheduled for retrial.

## ANALYSIS

### A. Belated Pretrial Disclosure and Listing of Witnesses

The parties have completed and filed their pretrial lists of witnesses, lists of exhibits, and memoranda of contentions of fact and law as contemplated by the Rules of the Court of Federal Claims ("RCFC"), Appendix A (Case Management Procedure) ¶¶ 14–16. Plaintiff ("CCA") has responded to defendant's ("the government's") pretrial filings by submitting a motion to exclude from trial the testimony of witnesses Kevin East and Michael Bodaken, to exclude the expert report of Kenneth Malek, and to limit the testimony of Kenneth Malek solely to the authentication and admissibility of exhibits identified on the government's list of exhibits as DX 200–207. The government has opposed this motion and CCA has filed a reply.

CCA's objections turn principally on the government's failure to identify the challenged witnesses and topics for projected testimony at the meeting of counsel held on May 8, 2009, in accord with RCFC Appendix A ¶ 13. Under the court's standard case management procedures, at the pretrial meeting of counsel the parties should disclose "a list of all exhibits (including summaries, see Fed.R.Evid. 1006) to be used at trial for case-in-chief or rebuttal purposes, except those to be used exclusively for impeachment." *Id.* ¶ 13(a). In addition, the parties should "[e]xchange a list of ... witnesses, including expert witnesses, who may be called at trial for case-in-chief or rebuttal purposes, except those to be used exclusively for impeachment." *Id.* ¶ 13(b). Finally, at the meeting, the parties should "[d]isclose to opposing counsel all contentions as to applicable facts and law, unless previously disclosed." *Id.* ¶ 13(c)(3). CCA claims that the government failed to list Messrs. East and Bodaken as witnesses and failed to disclose that Mr. Malek would file an expert report and be listed to testify as an expert about such a report. Pl.'s Mot. at 2.

The government responds that the meeting of counsel was only nominally held pursuant to RCFC Appendix A ¶ 13 and that the formalities contemplated by the court's standard pretrial procedures were not observed. Def.'s Resp. at 1–2. The government avers that the parties discussed witnesses and exhibits and focused on preparation of stipulations "that, it was hoped, would minimize or obviate the need for trial testimony." *Id.* at 2. As the government would have it, difficulties in reaching agreement on stipulations caused the contested expansion of its witness listings and projected testimony. *Id.* at 3–4.

CCA maintains its objections, noting that the meeting of counsel was not a nominally

conducted exercise without consequences. Pl.'s Reply at 1–2. CCA points to the fact that subsequent to the meeting of counsel, the parties filed a Joint Certification Regarding Meeting of Counsel, in which the parties stated that they had complied with the standard trial preparatory procedures:

> [C]ounsel hereby certify that they met and conferred pursuant to paragraph 13 of Appendix A of the Rules of the United States Court of Federal Claims. Counsel agreed to modify the dates set forth in Appendix A for submitting Memoranda of Contentions of Fact and Law, Witness Lists[,] and Exhibit Lists. The agreed-upon dates for submitting these papers to the [c]ourt will not require a change to the pre-trial hearing date or trial dates.

Joint Certification at 1 (Docket no. 130).

Under the court's procedures, the list of witnesses submitted at the meeting of counsel is a crucial disclosure. As RCFC Appendix A ¶ 13(b) states in part, "[f]ailure of a party to list a witness shall result in the exclusion of the witness's testimony at trial absent agreement of the parties to the contrary or a showing of a compelling reason for the failure." Rather than putting forward a "compelling reason" for its failure to list Messrs. East and Bodaken as witnesses and to list Mr. Malek as providing expert testimony, the government has sought to turn the tables against CCA by arguing that CCA has failed to justify the exclusion of testimony by Messrs. East and Bodaken. Def.'s Resp. at 4. That tactic is unavailing. Inclusion of those "new" witnesses on the government's final list filed under RCFC Appendix A ¶ 15 must rise or fall on the showing made by the government of a compelling need for their testimony.

The government apparently did not disclose the new witnesses at any time prior to submission of its final witness list, which occurred on June 29, 2009. Def.'s Witness List (Docket no. 135). The government's rationale for the listing of the new witnesses is that they will respond to contentions made in CCA's pretrial memorandum and serve to flesh out areas that would have been covered by the government's proposed pretrial stipulations. Def.'s Resp. at 5–6. The government argues that barring the testimony of the new witnesses would be a "drastic measure" that should be invoked only for "flagrant violations" of the court's pretrial procedures. *Id.* at 7 (quoting *Taylor v. Illinois,* 484 U.S. 400, 417 n. 23, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)).

■ As a precedent, *Taylor* is of limited utility in the circumstances at hand because the footnote the government quotes reflects a recitation of Illinois law respecting civil cases, not federal evidentiary law.[2] Moreover, *Taylor* was a criminal case in which the Compulsory Process Clause of the Sixth Amendment was being put forward to assign error to a failure to allow the testimony of a witness who had not been named in a defendant's pretrial disclosure. 484 U.S. at 411–12, 108 S.Ct. 646. Finally, *Taylor* actually upheld the sanction of precluding the testimony of the witness who was not timely named, based upon the trial judge's finding that the disclosure violation had been "both willful and blatant." *Id.* at 416, 108 S.Ct. 646. As the Supreme Court said in *Taylor,* albeit in the different, more demanding context of a criminal trial, "[a] trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial." *Id.* at 415, 108 S.Ct. 646.

Besides *Taylor,* the government also argues that the Federal Circuit has established

---

2. The footnote in the Supreme Court's opinion in *Taylor* begins with the recitation that:

> It should be noted that in Illinois, the sanction of preclusion [of a witness's testimony] is reserved for only the most extreme cases. In *People v. Rayford,*[ 43 Ill.App.3d 283, 1 Ill.Dec. 941, 356 N.E.2d 1274 (1976)] the Illinois Appellate Court explained:
> "The exclusion of evidence is a drastic measure; and the rule in civil cases limits its application to flagrant violations, where the un-

cooperative party demonstrates a 'deliberate contumacious or unwarranted disregard of the court's authority.' ... The reasons for restricting the use of the exclusion sanction to only the most extreme situations are even more compelling in the case of criminal defendants, where due process requires that a defendant be permitted to offer testimony of witnesses in his defense."

484 U.S. at 417 n. 23, 108 S.Ct. 646.

that a trial judge should consider five factors in determining whether non-disclosure of evidence before trial is harmless, citing and quoting *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1357 (Fed.Cir. 2005). *See* Def.'s Resp. at 4–5. In *MicroStrategy*, the Federal Circuit was applying the Fourth Circuit's procedural rules in a patent case, not its own rule. The Federal Circuit quoted the Fourth Circuit's criteria for determining harmlessness *vel non* of non-disclosure, as follows:

> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

*MicroStrategy*, 429 F.3d at 1357 (quoting *Southern States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 596 (4th Cir.2003)). In general terms, the Fourth Circuit's criteria are reflected in RCFC Appendix A ¶ 13(b). Requiring a showing of "compelling need" for testimony from a previously undisclosed witness correlates to factors (4) and (5) of the Fourth Circuit's test. Moreover, factors (1) and (2) relate to prejudice to the other party, and factor (3) concerns "the interest in the fair and efficient administration of justice." *Taylor*, 484 U.S. at 415, 108 S.Ct. 646. These same considerations bear on the court's application of RCFC Appendix A ¶ 13(b), albeit in the specific framework of this court's particular pretrial procedures as spelled out in the Appendix. It is instructive that in *MicroStrategy* the Federal Circuit ruled that "[t]he district court ... acted within its discretion in excluding MicroStrategy's non-expert damages theories for failure to supplement discovery interrogatories." 429 F.3d at 1356; *see also Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1122 (Fed.Cir.1996) (reviewing decision whether or not to allow witnesses' testimony for abuse of discretion).

Whether exclusion as a sanction should be imposed accordingly turns on the government's explanation for the belated listing of Messrs. East and Bodaken as witnesses and of Mr. Malek as providing expert testimony. Mr. East reportedly would testify about the funding available to the Department of Housing and Urban Development ("HUD") for sales during 1991 and 1992 of low-income housing projects to new owners who would preserve use of the projects by qualifying low-income residents, the assistance provided by HUD to facilitate such sales, and HUD's "limited role in the management of subsidized low-income housing projects." Def.'s Resp. at 6. The government's opposition to CCA's motion does not address the projected testimony of Mr. Bodaken, but the witness list provided by the government indicates that Mr. Bodaken would testify regarding similar topics, *viz.*, "the sales process under the Preservation Statutes, the role of non-profit organizations in the sales process, HUD's involvement in the sale process, HUD's funding of sales, and the availability of Government funding to facilitate the process." Def.'s Witness List at 4.[3] In short, both Messrs. East and Bodaken apparently intend to offer testimony on the economic impact of the Preservation Statutes on CCA with relation to the so-called "sales option" of LIHPRHA. CCA acknowledges that one of the proposed stipulations addressed this topic but recites that the proposed stipulation read: " 'The economic impact of the sale option on CCA, after taking into account statutory benefits conferred by the Preservation Statutes, was —— percent.' " Pl.'s Reply at 3 (quoting Supp. Polebaum Decl. ¶ 7). The percentage was reportedly blank because a timely disclosed expert for the government, Dr. Dickey, had not yet completed his analysis. *Id.* CCA avers that Dr. Dickey had completed his analysis by May 27, 2009, because on that date the government had informed CCA's counsel of Dr. Dickey's conclusion. *See id.*

---

**3.** In referring to the "Preservation Statutes," the government means the Emergency Low–Income Housing Preservation Act of 1987, Pub.L. No. 100–242, 101 Stat. 1877 (1988) ("ELIHPA"), codified at 12 U.S.C. § 1715*l* note, and the Low-Income Housing Preservation and Resident Homeownership Act of 1990, Pub.L. No. 101–625, 104 Stat. 4249 ("LIHPRHA"), codified in scattered sections of Title 12 of the U.S.Code, including 12 U.S.C. §§ 4101 to 4124.

■ The court is troubled by the belated disclosure of the two new factual witnesses, Messrs. East and Bodaken, but is persuaded not to exclude their testimony by two salient factors. First, the Court of Appeals emphasized in its remand that the court " 'should allow both sides to supplement the record with additional relevant evidence if they wish to do so.' " *CCA Assocs.*, 284 Fed.Appx. at 811 (quoting *Cienega X*, 503 F.3d at 1291). Second, the general topic of the new witnesses' testimony was canvassed in the original trial in this case as well as in the general disclosures made during the meeting of counsel held on May 8, 2009, and thus CCA should not be unduly prejudiced by the late addition of the two witnesses. *See Globe Sav. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 100–01 (2004) (refusing to preclude testimony of two witnesses who had been timely listed pursuant to RCFC Appendix A ¶ 13(b), but who had not been identified as having discoverable information under RCFC 26(b)(1)(A)).

■ The government's proposed listing of Mr. Malek, newly designated as an expert witness, rests on a different footing. Mr. Malek testified at the original trial on tax strategies that may have been employed by some developers of low-income housing projects, and the government offers no suggestion that his prior testimony is inadequate for purposes of the remand or was otherwise deficient. Def.'s Resp. at 9–10. Moreover, the government does not controvert that at the meeting of counsel, its counsel affirmatively represented that Mr. Malek would provide testimony only with respect to the admissibility and authenticity of private-placement memoranda issued with relation to certain other low-income housing projects. For the government now to contravene that representation and provide a new expert report by Mr. Malek contemporaneously with its witness list on June 29, 2009, with trial scheduled to commence on July 20, 2009, three weeks later, cannot be acceptable. Therefore, both for lacking a showing of need and for contravening its earlier representation, Mr. Malek's proposed expert testimony will be excluded and his testimony at trial will be confined to providing a foundation for the admissibility of the listed private-placement memoranda. *See Jade Trading, LLC v. United States*, 67 Fed.Cl. 608, 614–15 (2005) (barring the government from proffering summaries as evidence at trial where the summaries were provided belatedly and without identification of the documents upon which they were based).

The court notes that RCFC Appendix A ¶ 13(b) provides in pertinent part that "[a]ny witness whose identity has not been previously disclosed [before submission of a party's final witness list] shall be subject to discovery." Thus, within the twelve calendar days remaining before trial commences, CCA may depose or interview Messrs. East and Bodaken without further leave of court.

### B. CCA's Breach–of–Contract Claim

■ The parties have also disagreed about whether the retrial should encompass CCA's breach-of-contract claim as well as its takings claims. *Compare* Pl.'s Pretrial Mem. of Contentions of Fact and Law at 12–13 ("Pl.'s Mem."), *with* Def.'s Pretrial Mem. of Contentions of Fact and Law at 19–24 ("Def.'s Mem."). From the outset of this case, CCA's contractual claim had primacy over its takings claims. And, as the court noted in the scheduling conference held on April 28, 2009, "[o]rdinarily in these cases, the contractual c[laims] take precedence. And it's only when you don't have a contractual remedy for one reason or another … that you are remitted to a takings remedy." Sched. Conf. Tr. 10–11 (April 28, 2009); *see, e.g., Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 294–95, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (stating that "the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary" and that "[a]dherence to this rule is particularly important in cases raising allegations of an unconstitutional taking of private property") (citations omitted); *City Line Joint Venture v. United States*, 503 F.3d 1319, 1323 (Fed.Cir.2007) ("When a viable contract claim exists, we should not reach out to decide the takings issue.").

CCA recognizes that a split panel of the Federal Circuit in *Cienega IV* held on similar facts that there was no privity of contract

between the government and an owner with respect to the prepayment right. *See* Pl.'s Mem. at 12. However, the decision in *Cienega IV* in that regard conflicts with a later decision by the Tenth Circuit in *Aspenwood Inv. Co. v. Martinez,* 355 F.3d 1256 (10th Cir.2004). *Cienega IV* also fails to comport with venerable, long-standing common law precedents that separate, contemporaneously executed instruments, such as those that exist in this case, can form a single, overreaching agreement and ought to be construed together. *See United States v. Boisdore,* 52 U.S. (11 How.) 63, 87, 13 L.Ed. 605 (1851) (where "two papers formed the contract between the government and the petitioner, they must be construed together"); *see also Ryan v. United States,* 136 U.S. 68, 83, 10 S.Ct. 913, 34 L.Ed. 447 (1890) ("We say 'the papers,' because the principle is well established that a complete contract binding under the statute of frauds may be gathered from letters, writings[,] and telegrams ... so connected with each other that they may be fairly said to constitute one paper relating to the contract.").

Moreover, the proofs at trial of a breach of contract and of a takings claim are very similar, to the point where the Federal Circuit in *Cienega VIII* ordered that a prior judgment rendered in those cases on contractual grounds be reinstated as a judgment for just compensation under the Fifth Amendment. *See Cienega VIII,* 331 F.3d at 1353. Accordingly, the government will not be prejudiced in any way by CCA's pursuit of its contractual claim upon retrial. These housing prepayment cases can be adeptly handled under well understood principles governing breach of contract, as the closely related proceedings in the *Franconia* cases demonstrate. *See Franconia Assocs. v. United States,* 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002) (addressing claims for breach of prepayment rights in loans from the Farmers Home Administration for low-income housing in rural areas); *Franconia Assocs. v. United States,* 61 Fed.Cl. 718 (2004) (rendering proposed post-trial judgment awards on contractual claims); *see also City Line Joint Venture,* 503 F.3d at 1322 (stating that City Line had a viable claim for breach of contract where a mortgage note had been assigned to HUD).

Because CCA has neither waived nor abandoned its contractual claim, it should have the opportunity to perfect that claim and to persuade this court or, more appropriately, the Federal Circuit and potentially the Supreme Court, of the viability of that claim notwithstanding the precedent established in *Cienega IV.* As the Federal Circuit stated in its remand order, this court "should allow both sides to supplement the record with additional relevant evidence if they wish to do so." 284 Fed.Appx. at 811. The court accordingly will entertain CCA's evidence at trial in support of its contractual claims.

## CONCLUSION

For the reasons stated, CCA's motion to exclude testimony of late-designated witnesses and a late-filed expert report is GRANTED IN PART and DENIED IN PART. The motion is granted insofar as the proposed testimony and expert report of Kenneth Malek are concerned, except that Mr. Malek may testify regarding the authentication and admissibility of certain private-placement memoranda identified in Defendant's Exhibit List as DX 200–207. The motion is DENIED insofar as the proposed testimony of Messrs. Kevin East and Michael Bodaken is concerned, and they may testify at trial.

In addition, the court rejects the government's contention that the court should not entertain evidence in support of CCA's claim for breach of contract.

It is so ORDERED.